IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                             **Criminal Action No. 3:09-CR-87-6**
                                                                    **JUDGE BAILEY**

**JAMELL MASON,**

    **Defendant.**

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING
THAT THE DISTRICT COURT DENY
DEFENDANT'S MOTION TO SUPPRESS [232]**

## INTRODUCTION

Pending before the Court is Defendant Jamell Mason's Motion to Suppress Physical Evidence, filed on December 20, 2010. (ECF No. 232) On January 4, 2011, the Court held an evidentiary hearing on Defendant's motion. Defendant Jamell Mason appeared in person and by counsel, Kirk H. Bottner, Esq., the Government appeared by counsel Erin K. Reisenweber, Assistant United States Attorney, and testimony was taken from the following witnesses: Trooper Brian Bean of the West Virginia State Police, Sergeant Theodore Snyder of the Berkeley County Sheriff's Department, Sergeant Dean Olack of the West Virginia State Police, Patrolman Derek English of the Martinsburg Police Department, and Trooper Clay Ellwanger of the West Virginia State Police. After considering the briefs and evidence offered by the parties, the undersigned Magistrate Judge now issues this Report and Recommendation, recommending that the District Court deny Defendant's Motion to Suppress Physical Evidence. The reasons for recommending denial are set forth below.

## BACKGROUND

The Defendant, Jamell Mason, is one of six defendants named in this case as alleged distributors of heroin and crack cocaine. During an approximately six-month investigation that ended on June 5, 2008, the Eastern Panhandle Drug and Violent Crimes Task Force (hereinafter "the task force") made a total of eleven controlled purchases of heroin and/or crack cocaine from the six defendants named in the indictment. Of these eleven controlled purchases, six were made from the residence located at 703 New York Avenue in Martinsburg, West Virginia. On June 5, 2008, a final controlled purchase was made at 703 New York Avenue at approximately 3:31 P.M., after which the task force officers executed a search warrant on the residence. Immediately prior to the execution of the search warrant, the Defendant and several other individuals arrived at the residence in a blue Honda Accord with Maryland tags; as the Defendant exited the vehicle and approached the residence, members of the task force moved in and secured the Defendant as well as the other occupants of the vehicle, including co-defendants Craig Johnson and Orson Noel. The Defendant was subsequently arrested and transported to the Martinsburg Police Department, where 2.17 grams of heroin were seized from his person. Additionally, $298.00 in U.S. currency was seized from the Defendant, including $100.00 of recorded buy money used during the controlled purchase that occurred on June 5, 2008, at 703 New York Avenue. The heroin and the seized funds are the subject of the Defendant's present motion.

## FINDINGS OF FACT

On May 1, 2008, the task force, through a confidential information ("CI"), set up a controlled purchase from a woman named "Val," later identified as co-defendant Valeria Vincent. This controlled purchase was to be made in the parking lot of the Enterprise Car Rental Company in

Martinsburg, located at the intersection of N. Queen and E. Molar Streets. Trooper Bean and Sergeant Snyder, who were members of the task force at the time, testified that they provided surveillance for the controlled buy. Ms. Vincent, accompanied by two black males, arrived at the location in a blue Honda Accord with Maryland tags and exchanged crack cocaine for a $100.00 money order, which was then used to rent a vehicle from the car rental agency. Both the blue Honda Accord and the rented vehicle then left the location of the controlled buy, and Trooper Bean followed them to a residence in Hagerstown, Maryland. All of the subjects then got into the rented vehicle, which was subsequently stopped by the Hagerstown Police Department to identify the passengers. Among the passengers in the vehicle were co-defendants Valeria Vincent and Craig Johnson.

On June 5, 2008, the date of the search warrant and arrest of the Defendant, a CI set up another controlled purchase of crack cocaine through Ms. Vincent. The CI contacted Ms. Vincent by phone, who advised the CI to visit "Stickell's house," located at 703 New York Avenue, to get crack cocaine from a person named "Jah." Sergeant Snyder, who worked with the CI to set up the controlled purchase on this date, testified that other controlled purchases had been made from the residence at 703 New York Avenue. The CI was advised by co-defendant Christina Renee Saylor, who lived at the residence, that crack cocaine was not available, but that "Jah" could provide heroin. Two CIs then traveled to the residence at 703 New York Avenue, and a controlled purchase of $100.00 worth of heroin was made; the exchange was made outside of the home on the front steps by Ms. Saylor, who took the recorded buy money from the CI inside the home and returned with the heroin from "Jah." The officers that testified at the evidentiary hearing confirmed that the controlled buy took place at approximately 3:31 P.M.

During the controlled purchase, two individuals, both of whom had previously worked with the task force in other investigations, were observed leaving the residence at 703 New York Avenue. Both individuals were stopped near the midtown 7-11 convenience store and questioned about the drug activity at the residence. The first individual, identified as Danielle Bartley, informed Sergeant Snyder that a man named "Jah" was inside the residence. The second individual, identified as Ernest Spindle, or "Blackjack," advised Trooper Bean that "Jah" was still at the residence and that a dark colored Honda would be coming to the residence soon to bring drugs.[1] Sergeant Olack, who assisted with surveillance during the controlled buy, testified that he left the scene to take a statement from the CIs and then returned to the residence. Upon returning, Sergeant Olack observed a dark colored Honda parked in front of the residence; however, by the time Sergeant Olack was able to circle the block and park his car, the Honda had left the area. Sergeant Olack remained at the scene for ten minutes and then departed. While traveling down nearby Winchester Avenue, he spotted what he believed to be the same dark colored Honda traveling back toward the residence.

Following the controlled buy, the task force made preparations to secure and execute a search warrant for 703 New York Avenue. Trooper Bean testified that, just prior to the execution of the warrant, Sergeant Olack informed the other task force officers by radio that the dark colored Honda was approaching the residence. Trooper Bean and Trooper Clay Ellwanger testified that they were the first officers to arrive on the scene to execute the search warrant. Shortly after their arrival, a blue Honda Accord with Maryland tags arrived at the residence, and the Defendant exited the

---

[1] Trooper Bean testified that, although he was not aware of any information corroborating his statement at the time, he found Mr. Spindle's information to be credible because he had previously provided reliable information to task force officers about the location of firearms stolen in Virginia and used by a drug trafficker in the eastern panhandle.

vehicle and approached the house. Trooper Bean and Trooper Ellwanger then moved in, securing the Defendant and the occupants of the vehicle by removing them from the vehicle and placing them on the ground outside the residence.[2] As the individuals were being secured, the driver of the car, identified as co-defendant Craig Johnson, dropped a bag containing what was later determined to be heroin and crack cocaine. Also at this time, Trooper Bean observed the Defendant throwing a small baggie under the vehicle; upon closer investigation, a baggie containing a quantity of marijuana was discovered. The Defendant was then placed under arrest, and $298.00 in U.S. currency, including $100.00 later identified as the marked buy money from the earlier controlled purchase, was located on his person. The Defendant was then taken to the Martinsburg Police Station, where additional funds and a baggie containing 2.17 grams of heroin were discovered on his person.

## CONTENTIONS OF THE PARTIES

1. <u>Summary of the Defendant's Motion</u>

The Defendant seeks to suppress all evidence obtained during his arrest on June 5, 2008, including any observations made by police officers, on the grounds that: (1) he was detained by law enforcement officers without any probable cause, and (2) he was arrested and taken into custody without any probable cause. The Defendant bases his motion upon his right to be free from unreasonable searches and seizures under the 4th and 14th Amendments of the U.S. Constitution and Article 3, Section 6 of the West Virginia Constitution.[3]

---

[2] Trooper Bean testified that the occupants of the car, including the Defendant, were secured for reasons of officer safety as well as to identify the subjects in the car.

[3] The Court notes the Government's objection to the form and substance of the Defendant's motion, which makes a general assertion that the officers lacked probable cause but

2. Summary of the Government's Motion

The Government responds to the Defendant's motion by arguing that the detailed factual circumstances underlying the investigation of the Defendant and his co-defendants gave the officers probable cause to believe that he was committing or about to commit a felony offense at the time he arrived at 703 New York Avenue. Specifically, the Government argues that the multiple controlled purchases from 703 New York Avenue, the use of a blue Honda Accord with Maryland tags in previous drug transactions involving parties from 703 New York Avenue, the tip about an impending arrival of a dark colored Honda containing a shipment of drugs, and the subsequent arrival of the Defendant in a blue Honda Accord with Maryland tags, when taken together and viewed in light of the task force officers' training and experience with drug traffickers, led the officers to believe that the Defendant and the other occupants of the blue Honda Accord were distributing narcotics.

## DISCUSSION

1. The Task Force Officers Had a Reasonable Suspicion That the Defendant Was Involved in the Delivery of Narcotics When They Detained Him in Front of 703 New York Avenue

As his first ground for suppression, the Defendant contends that the officers lacked probable cause to detain him at the time that he exited the blue Honda Accord and approached the residence located at 703 New York Avenue. However, even if the officers lacked probable cause at that time, longstanding Supreme Court precedent recognizes that officers may legally conduct a brief,

---

otherwise fails to allege any facts or discuss any points of law. Although motions to suppress evidence "must make a preliminary showing as to the circumstances of the arrest sufficient to raise a question as to its legality," United States v. Rivera, 321 F.2d 704, 706 n.1 (2nd Cir. 1963), and the Defendant's very limited motion may well fall below this threshold, the undersigned Magistrate Judge nonetheless believes that the constitutional rights of the Defendant are best protected by addressing the legality of his detention and arrest.

investigatory stop of a person "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." United States v. Hernandez-Mendez, 626 F.3d 203, 207-208 (4th Cir. 2010) (quoting Terry v. Ohio, 392 U.S. 1 (1968)). Though the facts supporting a Terry stop need not give rise to probable cause,[4] the officer must be able to articulate an objectively reasonable suspicion of criminal activity. See, e.g., United States v. Arvizu, 534 U.S. 266, 274 (2002); United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008); United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997). An "inchoate and unparticularized suspicion or 'hunch'" is not a permissible basis for a Terry stop. Terry, 392 U.S. at 27; Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

Courts assess reasonable suspicion by examining the totality of the circumstances in order to determine whether officers had a "particularized and objective basis for suspecting the person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also Arvizu, 534 U.S. at 273; Sprinkle, 106 F.3d at 618. Although the reasonable suspicion standard "defies precise definition," McCoy, 513 F.3d at 411, it is less demanding than probable cause, Alabama v. White, 496 U.S. 325, 330 (1990), and falls "considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274.

The reasonable suspicion inquiry is fact-intensive, and individual facts and observations cannot be evaluated in isolation from each other. See Arvizu, 534 U.S. at 274-275 (finding that, even if the individual facts of a case may be susceptible to innocent explanation, they may be

---

[4] Although an investigatory stop is undoubtedly a common law seizure, Terry v. Ohio expanded the acceptable justification for such a seizure to include not only instances where officers have probable cause, but also instances where they have a reasonable suspicion of criminal activity. See California v. Hodari D., 499 U.S. 621, 627 n.3 (1991).

considered collectively to warrant a Terry stop). The Fourth Circuit has described reasonable suspicion as "a commonsensical proposition," United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993), and the Supreme Court has recognized that this inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. at 273 (quoting Cortez, 449 U.S. at 418). In light of this emphasis on officer experience, the Fourth Circuit has stressed the importance of giving "'due weight' to the factual inferences drawn by police officers as they investigate crime." McCoy, 513 F.3d at 411 (internal citations omitted); see also United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004). Officer knowledge of prior criminal activity may be coupled with other factors to create reasonable suspicion, Sprinkle, 106 F.3d at 617, and an area's propensity toward criminal activity may also be considered as one factor. Lender, 985 F.2d at 154.

When viewed in isolation, the Defendant's seemingly innocent act of exiting a blue Honda Accord with Maryland tags and approaching the residence located at 703 New York Avenue would not normally give rise to probable cause or a reasonable suspicion of criminal activity. However, the other facts known to the officers at the time clearly establish that, at a minimum, the officers had a reasonable suspicion that the Defendant was in the process of delivering a shipment of narcotics:

- Task force officers, on May 1, 2008, participated in a controlled buy from co-defendant Valeria Vincent, who arrived at the buy location in a blue Honda Accord with Maryland tags;

- Valeria Vincent directed a CI to go to the residence at 703 New York Avenue on June 5, 2008, to purchase a controlled substance;

- Task force officers conducted multiple controlled buys from the residence at 703 New York Avenue during their investigation, including a controlled purchase of heroin on June 5, 2008, that occurred 30 minutes before the Defendant was arrested at that location;

- On June 5, 2008, task force officers received a tip that a dark colored Honda would soon be arriving at 703 New York Avenue with a shipment of narcotics;

- The source that provided the tip on June 5, 2008, had just left the residence at 703 New York Avenue, was a person known by members of the task force from a previous investigation, and had previously provided reliable information to task force officers;
- Task force officers received the tip in-person from the informant, and thus had an opportunity to observe his demeanor and gauge his credibility; and

- Shortly after receiving the tip, officers observed a blue Honda Accord with Maryland tags arrive at the residence, and observed the Defendant exit the vehicle and approach the residence.

The above facts, which were testified to by the officers at the evidentiary hearing held on January 4, 2011, establish that drug activity at 703 New York Avenue was currently being investigated by the task force, that individuals related to the drug activity at that residence had previously been observed traveling in a blue Honda Accord with Maryland tags, and that a tip from a reliable source indicated that drugs were to be delivered to the residence on that day by individuals in a dark colored Honda. When the Defendant and his companions arrived shortly thereafter in a blue Honda Accord with Maryland tags, it was reasonable for the officers to suspect that they were in the process of delivering the controlled substances referenced by the informant.[5] Accordingly, the undersigned Magistrate Judge finds that the task force officers had a reasonable suspicion to detain the Defendant because the observations of the officers and a corroborated tip from a known informant led them to believe that the Defendant was engaged in criminal activity at the time of his detention.

---

[5] Additionally, safety concerns provided additional justification for the officers to detain the Defendant and the other occupants of the blue Honda Accord because Trooper Bean and Trooper Ellwanger, who initially secured the Defendant, were the first of a team of officers that were arriving on the scene to execute a valid search warrant on the residence. See United States v. Hargrove, 625 F.3d 170, 179 (4th Cir. 2010) (finding that officers had the authority to secure the premises and temporarily detain the occupants in order to secure the site for conducting a search pursuant to a valid search warrant).

2. <u>Officers Had Probable Cause to Arrest the Defendant Because Task Force Officers Witnessed Firsthand Information Corroborating an Anonymous Tip That a Dark Colored Honda Would Arrive at the Residence With a Shipment of Narcotics</u>

As his second ground for suppression, the Defendant contends that the officers lacked probable cause to arrest him and thus any search subsequent to that arrest was illegal. It is a well-established exception to the warrant requirement that police officers may make a public warrantless arrest; however, the officer must have probable cause to believe that a felony has been committed. <u>See</u> <u>United States v. McCraw</u>, 920 F.2d 224, 227 (4th Cir. 1990) (citing <u>United States v. Watson</u>, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). Probable cause exists if "at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." <u>Id.</u> (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Probable cause is based on the "totality of the circumstances." <u>Id.</u> (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328-29, 76 L.Ed.2d 527 (1983)). Only the facts and circumstances known at the time of the arrest may be considered by the court in reviewing whether officers had probable cause to make an arrest. <u>Id.</u> (citing <u>Henry v. United States</u>, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959)). "A combination of tips from an informant and first-hand corroborative observation of suspicious activity will provide probable cause for an arrest." <u>United States v. McCraw</u>, 920 F.2d 224, 227 (4th Cir. 1990); <u>see also</u> <u>Alabama v. White</u>, 496 U.S. 325 (1990) (anonymous informant and <u>Terry</u> stop); <u>Illinois v. Gates</u>, 462 U.S. 213 (1983) (anonymous informant and probable cause to search); <u>United States v. Chavez</u>, 902 F.2d 259 (4th Cir. 1990) (confidential informant and probable cause to search); <u>United States v. Porter</u>, 738 F.2d 622 (4th Cir. 1984) (anonymous informant and <u>Terry</u> stop); <u>United States v. Shepherd</u>, 714

F.2d 316 (4th Cir. 1983), cert denied, 466 U.S. 938 (1984) (confidential informant and probable cause to arrest).

In this case, the task force officers had probable cause to arrest the Defendant on suspicion of drug trafficking because the anonymous tip provided to the task force was corroborated by firsthand observations of Trooper Bean and Trooper Ellwanger. During a controlled purchase from an individual known as "Jah" at 703 New York Avenue, the task force officers received a tip from an informant that a dark colored Honda would soon be arriving at the residence with a shipment of narcotics. When the Defendant arrived at the residence in a blue Honda Accord with Maryland tags, the otherwise innocent behavior of the Defendant corroborated the anonymous tip, providing a basis for a showing of probable cause. See McCraw, 920 F.2d at 228 ("Even though certain of the observed activities on the part of McCraw constituted innocent behavior, when those activities so completely corroborated the informant's tips the innocent behavior would have provided a basis for probable cause."); see also Gates, 462 U.S. at 244 n.13 ("innocent behavior frequently will provide the basis for a showing of probable cause"). Other corroborating details linked both the vehicle the Defendant was traveling in, and the residence at which he was arrested, to drug sales being investigated by the task force:

- A blue Honda Accord with Maryland tags had been involved in a previous drug sale by Valeria Vincent on May 1, 2008;

- Ms. Vincent helped arrange a controlled purchase from a dealer named "Jah" located at 703 New York Avenue on June 5, 2008; and

- The June 5th controlled purchase occurred less than an hour before the dark colored Honda was supposed to arrive at the home with additional narcotics.

Based on all of the events known to the task force at the time, the undersigned Magistrate Judge finds that Trooper Bean and Trooper Ellwanger had probable cause to believe that the Defendant

was attempting to deliver narcotics to 703 New York Avenue at the time of his arrest.[6]

## RECOMMENDATION AND CONCLUSION

For the reasons articulated above, I find that the Defendant's Motion to Suppress Physical Evidence (ECF No. 232) should be **DENIED** because:

- The task force officers had a reasonable suspicion that the Defendant was engaged in delivering narcotics to the residence at 703 New York Avenue at the time he was detained;

- The task force officers had probable cause to arrest the Defendant on suspicion of narcotics trafficking; and

- Any evidence seized from the Defendant subsequent to his detention and arrest was legally obtained pursuant to a valid arrest.

Because trial in this case is set to commence on January 18, 2011, **IT IS ORDERED** that any party aggrieved by this Report and Recommendation shall file specific, written objections with the Clerk of Court on or before **12:00 noon on January 12, 2011**.[7] Any response to any such objection shall be filed by **12:00 noon on January 13, 2011**. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such

---

[6] Additionally, the undersigned Magistrate Judge notes that when the Defendant was detained for suspected drug activity, Trooper Bean witnessed him throw a baggie under the nearby Honda Accord. This baggie was recovered by the officer and found to contain a quantity of marijuana. Considering that the officers already suspected that the Defendant was involved in drug activity, they had probable cause to arrest him for possession of a controlled substance at the time they observed him discard the baggie. See United States v. Trimble, 986 F.2d 394 (10th Cir. 1993) (finding probable cause to arrest suspect for possession of a controlled substance when suspect attempted to discard a vial of crack cocaine during a traffic stop).

[7] Although parties are typically given fourteen days to respond to a Report and Recommendation, see 28 U.S.C. § 636(b)(1), this allowance is a maximum, not a minimum, time to respond, and the Court may require a response within a shorter period if exigencies of the calendar require. United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978). Shortening the response period in this case is particularly appropriate because the Defendant's case has been pending for a significant period of time and the Defendant's Motion to Suppress (ECF No. 232) was filed so close to the trial date.

objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this **7th day of January, 2011.**

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE